Barbour, J. (dissenting.)
This action was brought to recover the sum of $625, alleged in the complaint to have belonged to the plaintiff’s intestate at the time of his being killed, in March, 1865, and to be unjustly detained, from such plaintiff by the defendant. The answer avers that such intestate was, in August, 1864, the owner of such moneys, and, then, “ made an actual, free, voluntary, and valid gift of .the same to the defendant, and delivered it to him, with a direction to him to keep the same, in case of the decease of the donor; that the said donor died without revoking such gift, and that, thereby the defendant became the absolute owner of the said money.”
Upon the trial, the plaintiff’s counsel waived - —— *224 of the amount of his claim, and proved the interest on the remainder from the date of the demand; and the counsel for each of the respective parties thereupon admitted and agreed, in open court, “ that the money referred to in the pleadings was delivered by Jacob Dexheimer, deceased, to the defendant, at or about the time of the said Jacob’s enlistment into the army of the United States, and constituted a portion of his bounty money, received by him at the time of his enlistment.” The court excluded the evidence which was offered by the defendant’s counsel to prove the fact that the gift was made, as set forth in the answer, and directed the jury to find a verdict for the plaintiff.
As the funds delivered to the defendant were the bounty moneys which had been paid to Jacob Dexheimer upon his enlistment, we may assume that when such delivery was made the latter was a soldier of the United States, and about to take his place in an army which was then employed in a most bloody war; a war in which probably, fully one-fourth of all who were actively engaged in it, laid down their lives. The enlistment, too, was at so late a period in the war that the hazards and dangers of the service were well understood and known by all; and it follows, that it was in view of those hazards, and of the uncertainty of his ever returning alive to claim his money, that the same was delivered by the soldier to the defendant. Why, then, was not the alleged gift, if made, a good and complete donatio mortis causa?
Homer tells us that Telemaehus when about to engage in a conflict with the suitors of Penelope, gave certain treasures, in case he should fall, to his friend Pemeus, (Odyssey, B. 17, v. 781,)—a case very similar to the one before us—which Sir William Blackstone says was a very complete donatio mortis causa, (2 Bl. Com. 514, n. m. It is true, the text in the commentaries speaks of a gift of this character, as a death-bed disposition of property, as a delivery of goods by a person, in his last sickness, to keep in case of his death. But the note of Sir William, above *225 cited, shows he did not design to be understood as saying that such donations could be made only during a last sickness, or upon the death-bed of the donor, but, merely, as an instance, and the most common one. Swinburne speaks of this class of donations as “those gifts which be made in consideration of death.” (Swinb. part 1, § 6, n. 4.) But he does not limit the power to make such gifts during a last sickness or upon the bed of death. Chancellor Kent says it is essential to such gifts that the donor makes them in his last sickness, or, in contemplation and expectation of death; and that the apprehension of death may arise from infirmity, or old age, or, from external and anticipated danger. (2 Kent’s Com, 244.) Bouvier calls them gifts in prospect of death, and says such a gift must be made in peril of death, or, during the donor’s last illness, and to take effect only in ease he dies. (1 Bouv. Inst. Am. L. 277.) Mr. Burrill, after citing the definition of Blackstone as above, says such definition is too narrow in so far as it confines this species of gift to cases of last illness, it being sufficient if the apprehension' of death arises from other causes, as from infirmity, old age, or any external or anticipated danger. (Burr. Law Dic. art. Donatio Causa Mortis.) See, further, Walter v. Bodge. (2 Swanst. 97,) where the donor, although not in perfect health, was not dangerously sick, but well enough to go and return from the Bank of England; and Tate v. Hilbert, (2 Ves. Jr. 112,) in which the giver was old' and infirm, but had no particular or dangerous illness.
If, then, a gift is valid as a donatio mortis causa,, when made in contemplation, expectation, consideration, apprehension, or prospect of death, arising from sickness, infirmity, old age, or any external or anticipated peril or danger, as seems to be fully established by the learned writers above mentioned and the authorities cited by them, there can be no good reason why an enlisted soldier of the United States might not, under the circumstances detailed in the pleadings and admissions of the parties, have made *226 such a gift of his bounty money to another as'would constitute a good and complete donatio mortis causa. For the obligation assumed by such soldier, almost necessarily, exposed his life to extraordinary perils and dangers.
I am of opinion that if the gift had been proven the defendant would have been entitled to judgment upon the issues; and, therefore, that the learned justice erred in excluding the evidence offered and directing a verdict for the plaintiff. '>
The judgment should be reversed, with costs, and a new trial ordered.
Judgment affirmed.